

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| VERNELL BEACH, BY AND THROUGH HIS NATURAL MOTHER AND LEGAL GUARDIAN, YOLANDA WALTON, | ) ) ) ) ) | |
| Respondent, | ) | WD86029 |
| v. | ) ) | |
| KENNETH ZELLERS, COMMISSIONER, OFFICE OF ADMINISTRATION STATE OF MISSOURI AND ANDREW BAILEY, ATTORNEY GENERAL, STATE OF MISSOURI, | ) ) ) ) ) ) ) | OPINION FILED: DECEMBER 12, 2023 |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable S. Cotton Walker, Judge

Before Division Two: Gary D. Witt, Chief Judge, Presiding, Alok Ahuja, Judge and
Mark D. Pfeiffer, Judge

The Attorney General of the State of Missouri ("AG") and the Commissioner of

the Office of Administration of the State of Missouri ("Commissioner") (collectively

"Appellants") appeal the order and judgment by the Circuit Court of Cole County,

Missouri ("circuit court"), granting a permanent writ of mandamus directing Appellants'

predecessors to release eight million dollars plus interest from the State Legal Expense

Fund ("SLEF") to satisfy the judgment in favor of Respondent Beach for injuries he incurred at the hands of a State employee who was a nurse responsible for Beach's care. On appeal, Appellants claim the circuit court erred in: (1) issuing a writ of mandamus without having first issued a preliminary writ of mandamus in that it violated the mandatory procedures set forth in Rule 94 and deprived Appellants an opportunity to file an answer and point out factual disputes; (2) issuing a writ of mandamus because it violated due process by depriving Appellants of the opportunity to try their case; (3) issuing a writ of mandamus because SLEF did not cover the injuries here in that the State employee did not promptly tender the suit to the AG to defend, did not sufficiently cooperate with the AG, and was not acting within the scope of her official duties when the injury occurred; (4) issuing the writ of mandamus because a legal remedy in the form of declaratory relief was available and there were outstanding issues of fact; and (5) awarding attorney's fees because there was no basis on which to award them. We affirm the judgment of the circuit court as to Points I-IV on appeal, and we reverse as to Point V and pursuant to Rule 84.14[1] we enter judgment that is the same as the circuit court's September 30, 2022 judgment but strike the award of attorney's fees from that judgment.[2]

## Factual and Procedural Background

On May 26, 2017, Beach, a nonverbal resident with developmental disabilities in the care of the Department of Mental Health at its Southeastern Missouri Residential Services facility, was punched, kicked, and hit with a plastic hanger by a nurse ("Nurse")

---

[1] All rule references are to the Missouri Supreme Court Rules (2023).
[2] There was also a motion to strike the Appellants' reply brief appendix. The motion was taken with the case and is denied.

2

at the facility after he refused to go to bed. In July of 2017, Nurse was criminally indicted and ultimately charged with Count I the Class B felony of Assault in the Second Degree with a special victim and Count II with the unclassified felony of Armed Criminal Action.

In June of 2018, Beach's mother sued Nurse, the Department of Mental Health, and another employee on Beach's behalf, alleging negligence, assault, and battery. The Department of Mental Health was dismissed as a party on the basis of sovereign immunity. Nurse and the other employee failed to request the AG's office to provide them with a defense. In January 2019, Beach moved for a default judgment against Nurse and the other employee, and a default judgment was granted. After the default judgment, Nurse requested the AG to provide her with a defense. The AG entered its appearance on behalf of Nurse and moved the court to set aside the default judgment against Nurse, to which Beach consented, and the court granted the motion on June 13, 2019. On that same day, Nurse entered a plea of guilty in her criminal case pursuant to a plea agreement, in exchange for a sentence of five years in the Department of Corrections, with execution of that sentence suspended, and supervised probation for a period of five years.[3] After Nurse entered her guilty plea, the AG moved the court for leave to withdraw as her counsel in the civil case, claiming that her guilty plea constituted "lack of cooperation with her defense herein." The motion also stated that the allegations

---

[3] Nurse was originally charged with two criminal offenses arising from the events giving rise to the civil action. Under Count I she was charged with the Class B felony of Assault in the Second Degree with a special victim and under Count II she was charged with the unclassified felony of Armed Criminal Action. Pursuant to a plea agreement, the State filed an amended information reducing Count I to the Class E felony of Assault in the Third Degree and dismissed the count of Armed Criminal Action.

in Beach's lawsuit "arise out of [Nurse's] duties while an employee of the Missouri Department of Mental Health." The AG alleged that the "timing and substance of this guilty plea make it effectively impossible for the Attorney General's Office to defend her in this matter." A second default judgment was entered, and damages were assessed in the sum of eight million dollars plus interest from the date the first default judgment was entered against Nurse.

Beach sent a demand for satisfaction of the judgment from SLEF to the AG and the Commissioner on November 16, 2021. The demand was refused. Beach then filed an application for a writ of mandamus and petition for declaratory judgment with the circuit court on December 13, 2021, requesting that the circuit court order the AG and the Commissioner to release the funds from SLEF to satisfy the judgment in accordance with section 105.711 RSMo.[4] Beach also sent a letter via email along with the application for writ of mandamus and supporting documents to the AG's office asking whether the AG would accept service on behalf of Appellants. Also, on December 13, 2021, the circuit court issued proposed preliminary orders in mandamus; although they had not been signed by the circuit court, they were placed on Case.net, and Beach's counsel notified the AG's office that the proposed preliminary orders had been issued.

On December 20, 2021, the chief counsel for the AG's office responded, agreeing to waive service and asking Beach's counsel to agree that Appellants' "responsive pleadings" would be due thirty days after the AG's office entered its appearance. On December 30, 2021, the AG's office entered its appearance. On January 31, 2022,

_____

[4] All statutory references are to the Revised Statutes of Missouri (2016) as currently updated by supplement.

4

Appellants filed a motion to quash the application for mandamus and to dismiss the petition for declaratory judgment pursuant to Rule 94.07 along with suggestions in support. Appellants argued that the application for writ of mandamus should be quashed because: (1) Beach had an adequate remedy at law in the declaratory judgment action; (2) Beach had no right to payment from the fund because Nurse had not cooperated with the AG's office in that she had entered a guilty plea in her criminal case and because Nurse's acts were intentional; (3) Beach could not establish "a clear and unequivocal right to payment from the fund" because Nurse's cooperation "is a mixed question of law and fact," thus making the SLEF's payment obligation "a discretionary rather than a ministerial act" not subject to mandamus relief. The motion does not identify the disputed factual issues that would have rendered Beach's right to payment discretionary rather than ministerial.[5]

On March 11, 2022, Beach filed suggestions in opposition to the motion to quash. Notably, Beach's opposition agreed with Appellants that, "in the event this court believes a factual dispute exists as to whether [Nurse] failed to cooperate, quashing the writ of mandamus is the appropriate remedy," and the case should instead proceed on Beach's alternate prayers for declaratory judgment and/or equitable garnishment. A hearing was held on the motions. The circuit court denied the motions to dismiss and to quash and issued the permanent writ of mandamus directing Appellants to satisfy Beach's judgment

---

[5]Appellants' motion to quash argued that the presence of factual issues required that mandamus relief be denied, and at the motion hearing, Appellants' counsel argued that Appellants needed "to do discovery on factors that are required for fund coverage, like whether [Nurse] cooperated in her defense or whether [Nurse's] actions were performed in connection with her official duties."

5

from SLEF. Appellants moved the circuit court to vacate or for the court to reconsider, arguing that, since no preliminary writ was issued, they did not have an opportunity to file an answer, or to develop factual issues, or to argue that damages limitations in section 105.711 applied. Appellants also asked the circuit court to vacate its award of attorney's fees, which the circuit court purportedly did in an amended judgment, but the amended judgment, issued on January 28, 2023, was out of time under Rule 81.05(a)(2). This appeal follows.

## Standard of Review

"Mandamus is appropriate when seeking to require an official to perform a ministerial act." *Burnett v. Kansas City Sch. Bd.*, 237 S.W.3d 237, 238 (Mo. App. W.D. 2007) (citing *State ex rel. Mo. Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999)). "This court reviews the grant of a writ of mandamus under an abuse of discretion standard." *Burnett*, 237 S.W.3d at 238. "Under [that] standard, we will reverse the trial court's ruling only if it is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." *Id.* at 238-39 (internal quotation omitted). "We will not find an abuse of discretion if reasonable people might differ about the propriety of the trial court's discretion." *Id.* at 239. "Matters of statutory interpretation are reviewed *de novo*." *Id.* (citing *State ex rel. Wolfrom v. Wiseman*, 225 S.W.3d 409, 411 (Mo. banc 2007)).

*State ex rel. Mo. Clean Energy Dist. v. McElvoy*, 557 S.W.3d 473, 478 (Mo. App. W.D. 2018) (quoting *State ex rel. Scherschel v. City of Kan. City*, 470 S.W.3d 391, 397 (Mo. App. W.D. 2015)).

## Analysis

At the outset, we mention that most of Appellants' points on appeal fail to comply with Rule 84.04 because they are multifarious in that they allege multiple errors within a single point. "Multifarious points preserve nothing for review." *Guglielmino v. Jackson Cnty.*, 609 S.W.3d 852, 856 (Mo. App. W.D. 2020) (internal quotation omitted).

However, "[g]enerally speaking, an appellate court prefers to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief." *Guthrie v. Mo. Dep't of Labor & Indus. Rels.*, 503 S.W.3d 261, 266 (Mo. App. W.D. 2016) (internal quotation omitted). Here, despite noncompliance with Rule 84.04, we are able to discern Appellants' numerous allegations of error; therefore, we have chosen to exercise our discretion to review their claims on appeal.

### *Lack of Preliminary Writ*

Appellants' first point on appeal is that the circuit court erred in issuing a permanent writ of mandamus because it did not first issue a preliminary writ of mandamus as Rule 94 requires, and thus Appellants were unable to file their answer. Rule 94.04 provides that "[i]f the court is of the opinion that the preliminary order in mandamus should be granted, such order shall be issued." The Missouri Supreme Court has made clear that if a circuit court does not issue a preliminary writ under Rule 94.04 and then also does not issue a permanent writ, there is no basis for appeal. "There is no appeal from the denial of a preliminary writ of mandamus[,]" and so the "petitioning party then must file its writ petition in the next higher court." *Bartlett v. Mo. Dep't of Ins.*, 528 S.W.3d 911, 913 (Mo. banc 2017).

If the circuit court issues a preliminary writ but then denies the permanent writ, the petitioning party may appeal the denial of the permanent writ. *Id.* And when the circuit court does not issue a preliminary writ but issues summonses, treats the proceeding as a normal civil action, and then denies relief, the Supreme Court (but not this court) has the *discretion* to treat the summonses as a preliminary writ and consider the denial of relief on the merits, even though the circuit court should have issued a preliminary writ. *Id.* at

7

913-14; *Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 21-22 (Mo. banc 2019); *State ex rel. Tivol Plaza v. Mo. Comm'n on Hum. Rts.*, 527 S.W.3d 837, 842 n.3 (Mo. banc 2017). In this case, as Appellants point out, the circuit court did not issue a signed preliminary writ of mandamus as Rule 94.04 requires.

The cases on which Appellants rely involve a discrete issue of appellate jurisdiction that is not implicated here: whether a circuit court decision *denying* writ relief is reviewable by appeal, or instead whether the relator must instead file an original writ petition in a higher court. That issue is not presented here: in this case, the circuit court *granted* writ relief, and neither party contends that we lack jurisdiction to review the circuit court's judgment by appeal. In *McElvoy*, a case very similar to this case, the circuit court failed to issue a preliminary writ, but after both parties had briefed and argued the issues, the court issued a permanent writ of mandamus. 557 S.W.3d at 477-78. The party opposing the writ moved the circuit court for reconsideration and then appealed on the basis that the circuit court failed to issue the preliminary writ as Rule 94.04 requires before it issued the permanent writ and also argued that it should be able to present additional defenses that it had not already presented. *Id.* at 478. In affirming the circuit court's issuance of the permanent writ, this Court cited *State ex rel. Schaefer v. Cleveland* for the proposition that where "the respondent appears without service of an alternative [or preliminary] writ, and makes his return, the petition stands as and for the alternative writ itself for the purpose of the case and the return." *McElvoy*, 557 S.W.3d at 479 (quoting *Schaefer*, 847 S.W.2d 867, 870 (Mo. App. E.D. 1992)). "When a permanent writ is granted after a hearing on the merits, the aggrieved party may seek review through appeal." *Id.* at 481. So while this Court in *McElvoy* agreed "that the

8

circuit court did not follow the proper procedure[,]" it disagreed that the failure constituted reversible error, because the appellants had not been prejudiced. *Id.* at 480. In *McElvoy*, the Court noted that the parties "each had a full and fair opportunity to be heard." *Id.* The Court also noted that, while objecting to the procedure utilized, "the [appellant] failed to provide the circuit court with what relevant evidence she would have adduced at an additional hearing." *Id.*

Similarly, in this case, although the circuit court failed to issue a signed preliminary writ per Rule 94.04, both parties had an opportunity to be heard, in briefing and at two hearings—one prior to the issuance of the permanent writ and one after. During these proceedings, Appellants had an opportunity to present all of their arguments and give the circuit court some indication of what factual disputes they alleged remained to be determined. In addition, proposed preliminary writs had been filed, and Appellants were provided a copy.

Appellants argue that since no preliminary writ was actually issued by the circuit court before it issued the permanent writ, Appellants were never given an opportunity to answer. However, on December 20, 2021, the chief counsel for the AG's office agreed in writing to waive service and asked Beach's counsel to agree that Appellants' "responsive pleadings" would be due thirty days after the AG's office entered its appearance. On December 30, 2021, the AG's office entered its appearance. On January 31, 2022, Appellants filed a responsive pleading in the form of a motion to quash the application for mandamus and to dismiss the petition for declaratory judgment pursuant to Rule 94.07 along with suggestions in support. Beach argues that, per Rule 94.07 and *McElvoy*, the motions Appellants filed with the circuit court on January 31, 2022, *were* their

answer. Rule 94.07, which prescribes answers to petitions for writs of mandamus, states that "[t]he answer may include or be accompanied by one or more motions." The Rule does not provide for separate motions that precede the answer. Appellants acknowledge that courts and parties must follow writ procedure and that "rules for mandamus proceedings are different from the rules for normal civil actions in circuit court." Despite this, and with no citation to authority, Appellants' brief maintains that Appellants "did not need to file an answer because there was a pending Motion to Dismiss."

Moreover, as in *McElvoy*, the motion and the hearings did address the merits. Appellants raised the defense that SLEF could not be used to satisfy Beach's judgment against Nurse because Nurse had not cooperated with the AG in her own defense in that she entered a guilty plea in her criminal case. Later, in the hearing on the motion to reconsider, Appellants also argued that Nurse failed to cooperate by failing to promptly tender the suit to the AG to defend. Appellants also argued that SLEF could not be used to satisfy the judgment because Nurse's actions were intentional acts that were not connected to her job. Appellants also argued that a writ was inappropriate because Beach had an adequate remedy at law in the form of a declaratory judgment. Appellants argued that factual issues remained, and then, in the hearings, proceeded to vaguely repeat that Nurse's cooperation remained a factual issue in dispute. In sum, Appellants were fully heard on the merits; accordingly, although Appellants maintain that they do not need to show prejudice for the circuit court's failure to strictly follow writ procedure, *McElvoy* holds otherwise, and, like *McElvoy*, this case establishes no prejudice to Appellants that would constitute reversible error.

Point I is denied.

*Opportunity to Present Evidence in the Case:*

Appellants' second point on appeal is that the circuit court erred in issuing a permanent writ of mandamus because the writ deprived Appellants of the opportunity to present evidence in support of their case. We disagree. As stated in Point I, Appellants had the opportunity to argue and establish that SLEF could not be used to satisfy Beach's judgment because Nurse failed to cooperate with the AG in defending the case and because Nurse was not acting within the scope of her official duties when Beach's injuries occurred. The facts as to these issues are not disputed; they merely do not, as a matter of law, preclude recovery from SLEF to satisfy the judgment. This will be further developed in the analysis for Point III.

Appellants had the opportunity to defend the underlying civil action at the time the AG was allowed to enter its appearance and successfully had the first default judgment vacated and set aside. Any failure of Nurse to cooperate with AG prior to that point had no prejudicial effect to Appellants. The AG entered its appearance on Nurse's behalf and had the opportunity to fully represent Nurse and to submit evidence and defenses and to make arguments as to reasonable compensation for Beach's injuries, application of any statutory damage caps, etc. However, the AG moved to withdraw from representing Nurse immediately after she pled guilty to a pending criminal charge, thus foregoing Appellants' opportunity to defend the case. Appellants should not expect to be granted a second trial via the writ procedure when they refused to participate in the first.

Appellants allege no additional factual issues other than Nurse's late notice to the AG of the suit being filed against her discussed above and Nurse's alleged failure to cooperate in her defense by entering a plea of guilty in the criminal case. Appellants

11

allege nothing else that Nurse was asked to do or that she should have done in order to cooperate with the AG. Instead, the "issues" remaining are more appropriately framed as the legal effects of the facts as Appellants alleged and/or were agreed upon.

Point II is denied.

*Inapplicability of SLEF:*

Appellants' third point on appeal is that SLEF is unavailable to satisfy Beach's judgment against Nurse for a number of substantive reasons. Appellants point out that SLEF is a partial waiver of sovereign immunity extending to State officers and employees. Section 105.711; *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 816 n.15 (Mo. App. W.D. 2011). Accordingly, SLEF is only available when it clearly and unequivocally applies to the State employee's actions within the scope and course of their employment. *Koster*, 360 S.W.3d at 816. Appellants argue that SLEF statute does not apply for several reasons.

Appellants first claim that SLEF is unavailable to cover Nurse's actions against Beach because Nurse did not promptly tender the suit to the AG.[6] When Beach first filed his suit, Nurse did not promptly tender her case to the AG to defend, and she became subject to a default judgment. However, when she then tendered her case to the AG, the AG was able, with Beach's consent, to enter its appearance on her behalf and successfully have the default judgment set aside and to have a new opportunity to fully defend the

---

[6] Beach argues that this issue was not preserved because Appellants did not raise it in their motion to quash and motion to dismiss. However, they did raise it in their motion to reconsider and they argued it at the hearing on that motion. It is clear that the circuit court considered their argument on this issue and rejected it so we will address it on the merits.

12

case, negating any prejudice SLEF may have had from the earlier failure to tender the case. At that point, the AG lost the ability to deny SLEF coverage on the basis that Nurse did not promptly tender the case, as it could not be shown that the AG could not effectively defend the case or that there was any negative impact on the defense from the earlier failure. *Vasic v. State*, 943 S.W.2d 757, 758 (Mo. App. E.D. 1997), cited by Appellants, is inapposite. In *Vasic,* the injured party entered into a consent judgment with the wrongdoing State employee, both of whom were represented by private counsel. *Id.* When the plaintiff attempted to collect from SLEF, the Court properly found that the AG had not had an opportunity to defend the State employee, and the consent judgment prejudiced SLEF. *Id.* Such is not the case here. Appellants in this case cannot establish that Nurse's failure to tender the case for defense earlier precludes SLEF from being used to satisfy her judgment. The AG had a full opportunity to defend the case prior to the final judgment, but chose to withdraw from representation based on the guilty plea in the criminal matter.

Appellants also claim that SLEF is unavailable to satisfy Beach's judgment because Nurse failed to cooperate with the AG in the defense of the suit. The AG withdrew from Nurse's representation on this basis, claiming that Nurse failed to cooperate as required by section 105.716.2 solely by pleading guilty in her criminal case. But Appellants cite no authority mandating or even implying that a State employee is required to refrain from pleading guilty in a criminal case in order to possibly obtain a more favorable outcome in the civil matter or risk the denial of coverage by SLEF.[7] On

[7] In *Farm & City Insurance v. Hassel*, the Iowa Supreme Court held that a private insurance company could not establish that the insured driver failed to cooperate as

the contrary, Beach cites to *State ex rel. Cravens v. Nixon*, 234 S.W.3d 442 (Mo. App. W.D. 2007), where the State employee committed sexual assault and pled guilty in his criminal case, yet the Court found that the employee's actions were covered by SLEF with respect to the civil suit. Additionally, as Beach points out, section 105.716.2, which pertains to state employees protected by SLEF, requires the employees to cooperate with the AG by assisting the AG "in all respects, including the making of settlements, the securing and giving of evidence, and the attending and obtaining witnesses to attend hearings and trials." Nowhere does the statute mention notifying or securing approval from the AG before the employee takes any action in any underlying criminal case where applicable. Indeed, Appellants do not even allege that Nurse was asked to keep the AG's office informed regarding the progress of her criminal case. Appellants also do not claim that they requested Nurse to take any action with regard to the civil case that she failed or refused to do: there is no allegation that Nurse refused to testify, answer questions, or provide witnesses; there is no allegation that Nurse failed to provide physical evidence to assist in the defense.[8] The only alleged failure to cooperate was

---

required by the insurance policy by pleading guilty to the charge of operating a motor vehicle upon a public highway while intoxicated. 197 N.W.2d 360, 362 (Iowa, 1972). While the court noted that if the insured had concealed facts or "made false statements as to his activities" causing a change in the evidentiary pattern, failure to cooperate may be found, *id.* at 363, it ultimately concluded that the insurance company had "no right to control or influence defendant Hassel in his efforts to dispose of the criminal charges pending against him to his own best advantage." *Id.* at 364.

[8] We note that in Missouri, in cases involving *private insurers*, which often draft into policies a duty of the insured to cooperate in any case for coverage to apply, the insurers must suffer prejudice for the failure to cooperate, or a lack of knowledge of the opportunity to defend before coverage is forfeited. *See, e.g., Northrop Grumman Guidance & Electronics v. Emp'rs Ins.*, 612 S.W.3d 1, 24 (Mo. App. W.D. 2020). While this principle might naturally extend to Appellants requiring a showing of prejudice for the State employee's failure to cooperate, the SLEF is a limited waiver of sovereign

14

Nurse's guilty plea in her criminal case, and we agree with the circuit court that this does not constitute a failure to cooperate in her defense in the civil action.  In fact, it would be very difficult for Nurse to give a deposition or to testify in the civil matter while she was facing pending criminal charges arising from the same events without incriminating herself or having to assert her right not to testify in the civil matter pursuant to the Fifth Amendment to the United States Constitution.  Further, it would place Nurse in an untenable situation if she had to reject a plea offer in order to retain coverage from SLEF when the plea offer would reduce her criminal charges from the potential of fifteen years on a Class B felony charge and an unlimited sentence on the unclassified felony of armed criminal action to an offer of probation on a Class E felony.

Finally, Appellants argue that SLEF is unavailable to satisfy the judgment because Nurse's actions that injured Beach were not performed in connection with her official duties as a State employee because her acts were intentional.  Again, we disagree.

In 1996, this Court decided *Dixon v. Holden*, 923 S.W.2d 370, 379 (Mo. App. W.D. 1996), in which the State objected to SLEF being used to satisfy a judgment against two wrongdoing State employees on the basis that, among other things, the State employees were not acting in connection with their official duties because they were wrongfully involved in wiretapping another State employee.  This Court, examining the plain language of sections 105.711-105.726, found that there was no requirement that the

---

immunity, and so the SLEF must clearly and unequivocally apply in order to satisfy judgments.  *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 816 n.15 (Mo. App. W.D. 2011).

15

State employees be performing their duties in good faith for SLEF to be available to satisfy the judgment. *Id.*

Later, in 2002, this Court had an opportunity to examine the SLEF statutes again, this time finding that SLEF could be available to satisfy a judgment against State employees while acting in connection with their official duties, even if the act causing the injury was a crime. *Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 321-22 (Mo. App. W.D. 2002). In *Betts-Lucas*, the State employee was also a healthcare provider who, in anger, injured a patient in a residential facility. *Id.* at 314. That patient died, and the State employee pled guilty to involuntary manslaughter, yet this Court found that the actions committed arose out of or were in connection with the employee's official duties. *Id.* at 314, 322. In *Betts-Lucas*, we held that "[u]nder the language of the statute, as written, that conduct by a state employee may also be criminal is important for Fund coverage only to the extent that the criminal charge demonstrates conduct to have no relationship to the employee's official duties." *Id.* at 321-22.

And as mentioned above, in *Cravens*, this Court found that SLEF was available to pay damages in a civil suit resulting from a sexual assault by a State employee who worked in a prison kitchen and who also pled guilty to a criminal charge in connection with the incidents. *Cravens*, 234 S.W.3d at 444. Although the AG argued that the sexual assault did not arise out of or was not done in connection with the employee's official duties, the Court disagreed, because the assault occurred while the State employee was supervising an inmate who was also working in the kitchen, and because his position as the supervisor facilitated the assault. *Id.* at 448.

16

We find that these cases dictate the conclusion that Nurse's assault of Beach arose out of or was in connection with her official duties for purposes of SLEF coverage. Nurse was responsible for putting residents, including Beach, to bed, and she became angry and began assaulting him when he refused to go to bed.  Because Nurse was acting in connection with her official duties, even if her actions were criminal, SLEF is available to cover damages arising from her actions.

Point III is denied.

***Propriety of Writ as a Remedy:***

Appellants' fourth point on appeal is that the circuit court erred in issuing the writ because a writ was an inappropriate remedy in this case in that Beach had an adequate remedy at law in the form of declaratory judgment, and there are outstanding questions of fact.  We disagree with both of these contentions.

Our review of applicable case law reveals that *either* declaratory judgment or writ of mandamus may be appropriate when seeking to have judgments satisfied through SLEF, depending on the circumstances.  Both declaratory judgments and writs of mandamus may be available when there is no adequate remedy at law.  *Nichols v. McCarthy*, 609 S.W.3d 483, 486-87 (Mo. App. E.D. 2020).  In *Nichols*, although SLEF was not at issue, a writ was sought, and the preliminary writ was denied without opinion, leaving nothing for review; therefore, the court found that declaratory judgment remained an appropriate remedy.  *Id.*

In the SLEF context, *Cravens* utilized the writ procedure.  *Cravens*, 234 S.W.3d at 444.  *Betts-Lucas* involved a summary judgment issued in an action for declaratory judgment.  *Betts-Lucas*, 87 S.W.3d at 314.  *Dixon* was also decided by declaratory

17

judgment. *Dixon*, 923 S.W.2d at 373. It is clear that either mechanism can be appropriate depending on the circumstances. Writ of mandamus was appropriate here, as there was nothing remaining for Appellants to do but satisfy the judgment from the SLEF.

The second issue in Appellants' Point IV is that mandamus was improper because factual issues remain as to whether Nurse promptly tendered her case for the AG to defend, whether Nurse cooperated with the AG's office, and whether her actions were connected to her official duties. The parties agree to the facts in each of these respects, just not to the legal effects of those facts. "That the parties disagree on the legal consequences of a particular set of facts does not create a 'fact' issue" precluding judgment, in this case, a writ of mandamus. *Betts-Lucas*, 87 S.W.3d at 322. The parties, as set forth in their various pleadings, agree on what Nurse did to cause Beach's injuries, when Nurse tendered the case for defense, and what Nurse did that Appellants view as failure to cooperate. These are not factual disputes, but rather the question is the legal effect of those facts; and, as discussed previously, we conclude that the legal consequences of the facts do not favor Appellants.

Point IV is denied.

### *Attorney's Fees:*

Appellants' final point on appeal is that the circuit court erred in granting attorney's fees to Beach. The circuit court granted attorney fees in its original judgment but then attempted to amend its judgment excluding the award of attorney's fees. The initial judgment was issued on September 30, 2022. Appellants filed their motion to vacate and motion to reconsider on October 20, 2022. A judgment normally becomes

18

final for purposes of appeal thirty days after it is issued, but a party may file a motion for new trial or to amend the judgment. Rule 74.01. "[T]he timely filing of a motion for new trial or an authorized after-trial motion, not ruled on by the trial court prior to the expiration of the thirty-day period following judgment entry, extends not only the time when a judgment becomes final for purposes of appeal . . . , but also the time during which the trial court retains jurisdiction to amend under Rule 75.01." *Koppenaal v. Dir. of Revenue*, 987 S.W.2d 446, 449 (Mo. App. W.D. 1999). In this case, the post-trial motion filed by Appellants *included* their argument that attorney's fees were improperly awarded. The circuit court held a hearing on the motions and allowed briefing and entered its amended judgment on January 28, 2023. Rule 81.05(a)(2)(A) states that "[n]inety days from the date the last timely motion was filed," any such pending motions "shall be deemed to be overruled[,] and the prior judgment becomes final. The circuit court's amended judgment was filed more than ninety days after the motion for new trial or to amend judgment. Therefore, the motion was deemed overruled, and the original September 30, 2022 judgment became final.

The parties agree that the award of attorney's fees was erroneous.

Point V is granted.

## Conclusion

For all of the above-stated reasons, we affirm the September 30, 2022 judgment of the circuit court in part, and reverse the award of attorney's fees. Pursuant to Rule 84.14 we enter judgment consistent with the circuit court's September 30, 2022 judgment, but strike the award of attorney's fees from the judgment.

19

_____
Gary D. Witt, Judge

All concur